UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, a North Carolina corporation,<br><br>                    Plaintiff,<br><br>     v.<br><br>JOHNNY'S QUALITY EXTERIORS, INC., a Washington corporation; RIGOBERTO CARRASCO and ENEDINA CARRASCO, husband and wife, and the marital community comprised thereof,<br><br>                    Defendants. | CASE NO:  1:14-CV-3120-TOR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiff Atlantic Casualty Insurance Company's (Atlantic Casualty) Motion for Summary Judgment (ECF No. 26).  This matter was submitted for consideration without oral argument.  The Court has reviewed the parties' briefing and the record and files herein, and is fully informed.

//

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

BACKGROUND

Atlantic Casualty's amended complaint seeks a declaration by this Court that it has no duty under an insurance policy to defend or to indemnify Johnny's Quality Exteriors, Inc. (Johnny's) for claims made against Johnny's in a lawsuit currently pending in Yakima County Superior Court.  ECF No. 25.

Atlantic Casualty filed its motion for summary judgment on June 12, 2015.  ECF No. 26.  Johnny's filed an opposition to the motion.  ECF No. 31.  Defendants Rigoberto and Enedina Carrasco (collectively, the "Carrascos") have not responded to the motion.

FACTS[1]

Johnny's obtained a commercial general liability insurance policy from Atlantic Casualty for the period of September 8, 2013, until September 8, 2014.  ECF No. 27 at 2, 5–16.  Under this policy Atlantic Casualty will pay "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  *Id.* at 15 ¶ 1.a. (Endorsement amending ¶ 1.a.).  Under the policy, Atlantic Casualty also has "the right and duty to defend the insured against any 'suit' seeking those damages."  *Id.*  Atlantic Casualty does not, however, have a "duty to defend against suits seeking damages

---

[1] These are the undisputed material facts, relevant to the issues before this Court.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

for 'bodily injury' or 'property damage' to which this insurance does not apply."
*Id.*

On March 26, 2013, Juan Isiordia, the owner of Johnny's, entered into a contract with the Carrascos to rebuild their restaurant. ECF No. 28 at 17–20, 51. A subcontractor, Arteaga Construction (Arteaga), was hired in April 2013 to build some walls. *Id.* at 52. The Arteaga contract's description of the work to be performed reads, in part, as follows:

> FRAMING LABOR
>
> CMU BLOCK WALL 8" 50' X 18'8" (FRONT ONLY)
> LABOR AND MATERIAL.
> . . .
>
> *Customer will pay 60 % of the full amount when I have
>  the walls ready for trusses.
> *And the other 40 % when the job is done.
> *Customer will supply all the materials for framing, and
> Arteaga construction (sic) LLC provide material for CMU wall
> . . .
>
> 5 years warranty

ECF Nos. 32-1 at 2.

On October 27, 2013, construction on the restaurant was still in progress and incomplete when wind blew down the partially-constructed western wall of the restaurant which Arteaga was building. ECF No. 28 at 25 ¶ 3.12, 52 ¶ 8, 62 at

Admission No. 8.  Uninstalled "hardi (sic)[2] panel siding material" was also damaged in the collapse.  ECF No. 28 at 64–65 Admission Nos. 17, 18.

Johnny's then negotiated with Carrasco's insurance company, Zurich (and its agent), to repair the collapsed wall (the verbal insurance repair agreement) and hired Arteaga Construction as the subcontractor to perform the work.  ECF Nos. 32 at ¶¶ 6, 9; 28 at 27, 53.

On February 5, 2014, Johnny's filed a complaint against the Carrascos in Yakima County Superior Court alleging breach of both the March 26 contract and the verbal insurance repair agreement, as well, as seeking alternative quantum meruit relief.  ECF No. 28 at 6–15.  On March 10, 2014, the Carrascos filed an answer, asserted counterclaims against Johnny's for breach of contract and violation of the Washington Consumer Protection Act and asserted third-party claims against others.  ECF No. 28 at 39–47.

On September 19, 2014, Johnny's filed an amended complaint in the state court action.  ECF No. 28 at 22–32.  In that complaint, Johnny's alleged that the Carrascos failed to pay amounts due to Johnny's under the March 26 construction contract.  *Id.* at 25 ¶¶ 3.8–3.11.  Johnny's also alleged that the Carrascos failed to pay the amount due under the verbal insurance repair agreement.  *Id.* at 27 at ¶¶ 3.18–3.20.  Johnny's further alleged that when it made demands for the amounts

---

[2] This is likely a reference to James Hardie brand siding.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

due, the Carrascos fired Johnny's and locked all contractors out of the building to prevent performance on the contracts. *Id.* at 28–29, ¶¶ 3.23–3.28. On these factual allegations, Johnny's again asserted claims for breach of the March 26 contract, breach of the verbal insurance repair agreement, and quantum meruit relief. *Id.* at 29–30.

On November 20, 2014, the Carrascos filed an answer to Johnny's amended complaint, again asserted counterclaims and third-party claims. ECF No. 28 at 49–58. The Carrascos alleged that Johnny's agreed in the March 26 contract to serve as the general contractor for construction work to be completed on their restaurant. *Id.* at 51 ¶¶ 3–4. The Carrascos also alleged that Johnny's hired Arteaga to construct the walls of the restaurant and that Isiordia promised to properly supervise the construction work. *Id.* at 52 ¶¶ 5, 7. The Carrsacos further allege that the wind which occurred on October 27, 2013, was no more than "a normal, seasonal wind," and that the collapsed western wall was not properly secured, braced, or shorn against such normal seasonal winds. *Id.* at 52 at ¶¶ 8–9. Finally, the Carrascos allege improprieties in the manner in which Johnny's secured the insurance contract to rebuild the wall, contending Johnny's submitted false and inflated information to the insurance company and that Isiordia demanded payment from the Carrascos of money he was not entitled to receive. *Id.* at 53 at ¶ 13, 54 at ¶ 16, 18.

On these factual allegations, the Carrascos asserted three counterclaims against Johnny's.  First, the Carrascos asserted that Johnny's breached the March 26 contract by failing to ensure that the western wall was properly shorn and braced against normal seasonal wind.  *Id.* at 55 at ¶ 22.  The Carrascos asserted that Johnny's breached the contract by failing to adequately supervise Arteaga and is liable for the cost to repair the broken wall that was warrantied for five years.  *Id.* at 55 at ¶¶ 22–23.   The Carrascos also asserted Johnny's breached its contract by failing to put the insurance repair contract in writing, by claiming moneys to which it was not entitled, and by submitting false and inflated information to Zurich.  *Id.* The counterclaim asserts liability for "damages caused to the wall and the property on which it fell" as well as damages "for the delay that the falling wall caused" and loss of insurance benefits.  *Id.* at 55 at ¶ 24.

Second, the Carrascos asserted that Johnny's violated the Washington Consumer Protection Act by submitting false and inflated information to the Carrascos' insurance company about the cost of repairs to the wall, and for falsely and deceptively advertising, "No money up front till (sic) your job is done."  *Id.* at 56 at ¶¶ 26–28.

Third, the Carrascos asserted that Isiordia was acting as the Carrascos' agent in assisting them with negotiations on the insurance claim for the wall and that

Isiordia and Johnny's breached duties imposed upon them pursuant to that agency relationship.  *Id.* at 57 at ¶¶ 31–32.

In response to Johnny's claim seeking legal defense and indemnification from Atlantic Casualty for the Carrascos' counterclaims, Atlantic Casualty agreed to participate in Johnny's defense against the counterclaims.  ECF No. 27 at 18.  However, Atlantic Casualty noted that upon reviewing Johnny's policy, Atlantic Casualty had "determined that the counterclaims seek damages that may not be covered under the policy" and reserved the right to further investigate the matter, to withdraw from the defense at any time, and "to file a declaratory relief action to have a court determine [Atlantic Casualty's] rights under the policy and its obligations to Johnny's."  *Id.* at 18, 33; *see also id.* at 37–41, 43–44.[3]

In the matter before this Court, Atlantic Casualty seeks declaratory relief clarifying its obligations to defend and indemnify Johnny's for the counterclaims asserted by the Carrascos.  ECF No. 25.  Atlantic Casualty has now moved the

---

[3] Washington State law has "long recognized that a liability insurer uncertain of its obligation to defend its insured may undertake a 'reservation of rights' defense while seeking declaration regarding coverage."  *Nat'l. Surety Corp. v. Immunex Corp.*, 176 Wash.2d 872, 875 (2013).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

1   Court for summary judgment declaring that Atlantic Casualty has no obligation to

2   defend or indemnify Johnny's in the state court action.  ECF No. 26.

3                                          DISCUSSION

4           Summary judgment may be granted to a moving party who demonstrates

5   "that there is no genuine dispute as to any material fact and that the movant is

6   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party

7   bears the initial burden of demonstrating the absence of any genuine issues of

8   material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then

9   shifts to the non-moving party to identify specific genuine issues of material fact

10  which must be decided at trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

11  256 (1986).

12          For purposes of summary judgment, a fact is "material" if it might affect the

13  outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any

14  such fact is "genuine" only where the evidence is such that a reasonable factfinder

15  could find in favor of the non-moving party.  *Id.* at 248, 252 ("The mere existence

16  of a scintilla of evidence in support of the plaintiff's position will be insufficient;

17  there must be evidence on which the jury could reasonably find for the plaintiff.").

18  In ruling upon a summary judgment motion, a court must construe the facts, as

19  well as all rational inferences therefrom, in the light most favorable to the non-

20  moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "[A] district court is not

entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  Only evidence which would be admissible at trial may be considered.  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

Because this case is before the Court under its diversity jurisdiction, *see* ECF No. 1 at ¶ 1.5, the Court applies state law in resolving the parties' claims. *Standard Fire Ins. Co. v. Peoples Church of Fresno*, 985 F.2d 446, 448 (9th Cir. 1993).  Washington State law recognizes that an "insurer's duty to defend is separate from, and substantially broader than, its duty to indemnify."  *Nat'l Surety Corp.*, 176 Wash.2d at 878.  "The duty to indemnify applies to claims that are actually covered, while the duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage."  *Id*. at 879 (emphasis and internal quotation marks omitted).  "If there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend."  *Id.* (quotation marks and brackets omitted).  "Although this duty to defend is broad, it is not triggered by claims that clearly fall outside the policy."  *Id.*

"[A]n insurer may not rely on facts extrinsic to the complaint in order to deny its duty to defend where . . . the complaint can be interpreted as triggering the duty to defend."  *Truck Ins. Exchange v. Vanport Homes, Inc.*, 147 Wash.2d 751,

761 (2002) (internal quotation marks and emphasis omitted).  "If the insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend." *Id.*

An insured party, however, may rely upon facts extrinsic to the complaint to establish the insurer's duty to defend "if (a) the allegations [in the complaint] are in conflict with facts known to or readily ascertainable by the insurer or (b) the allegations in the complaint are ambiguous or inadequate." *Id.*  If the complaint is ambiguous it is to be liberally construed in favor of triggering the insurer's duty to defend.  *Id.* at 760.

As such, the Court's task in determining whether Atlantic Casualty has a duty to defend Johnny's is to evaluate initially whether Atlantic Casualty has demonstrated the absence of any genuine issues of material fact that the counterclaims are founded upon facts alleged in the complaint which show the claims clearly fall outside the policy.  The burden then shifts to Johnny's to identify specific genuine issues of material fact—in the complaint or extrinsic to it—which may, if proven, establish that a reasonable interpretation of those facts could result in coverage.

In this evaluation, the Court must construe the insurance policy as a contract between the parties.  *Quadrant Corp. v. Am. States. Ins. Co.*, 154 Wash.2d 165,

171 (2005); *see also State Farm Gen. Ins. Co. v. Emerson*, 102 Wash.2d 477, 480 (1984) ("Insurance policies are to be construed as contracts, and interpretation is a matter of law."). The Court must consider the policy as a whole and give it a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Quadrant Corp*, 154 Wash.2d at 171. If the policy language is clear and unambiguous, the Court must enforce the policy as written; it "may not modify it or create ambiguity where none exists." *Id.* "[A] clause is ambiguous only when on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Id.* (internal quotation marks omitted). Only if a clause is ambiguous may the Court consider extrinsic evidence of the intent of the parties to resolve the ambiguity. *Id.* at 171–72. The Court must then resolve any remaining ambiguities in favor of the insured party. *Id.*

The policy at issue here imposes upon Atlantic Casualty a duty to defend Johnny's in any suit seeking "damages because of 'bodily injury' or 'property damage' to which this insurance applies." ECF No. 27 at 15 ¶ 1.a (Endorsement amending ¶ 1.a.). The insurance applies only if

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured . . . knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

1

2    *Id.* at 8 ¶ 1.b.  There is no dispute that the events in question occurred in the

3    coverage territory, during the policy period, and were unknown to Johnny's prior

4    to that period.  As such, the Court focuses on the remainder of the first requirement

5    for application of the insurance policy, whether the facts alleged in the state court

6    action demonstrate there was "property damage" caused by an "occurrence."

7         According to the policy, "property damage" means:

8         a.  Physical injury to tangible property, including all resulting loss of
              use of that property.  All such loss of use shall be deemed to occur
9             at the time of the physical injury that caused it; or

10        b.  Loss of use of tangible property that is not physically injured.  All
              such loss of use shall be deemed to occur at the time of the
11            "occurrence" that caused it.

12        However, "property damage" does not include breach of contract,
          breach of any express or implied warranty, deceptive trade practices
13        or violation of any consumer protection laws.

14        "Property damage" does not include any cost or expense to repair,
          replace or complete any work to any property that you, or any insured,
15        are otherwise obligated to repair, replace or complete pursuant to the
          terms of any contract.

16

17   *Id.* at 16 ¶ 17 (Endorsement Amended Definition - Property Damage).  The policy

18   defines "occurrence" as "an accident, including continuous or repeated exposure to

19   substantially the same general harmful conditions."  *Id.* at 12 ¶ 13.

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12

1    Certain facts in the underlying state action, at first glance, appear to be

2    covered by the general provisions of the insurance policy.  As alleged by the

3    Carrascos, the October 27 collapse destroyed the restaurant's western wall and

4    damaged the Hardie panel siding material.  ECF No. 28 at 52 ¶ 10, 55 ¶ 24

5    (alleging Johnny's is liable for "the damages caused to the wall and the property on

6    which it fell").  Both the wall and the Hardie panel siding are tangible property that

7    was physically injured.  As such, the facts alleged in the state court action establish

8    there was "property damage" as the policy defines the term.  *See* ECF No. 27 at 16

9    ¶ 17.[4]  Atlantic Casualty therefore has a duty to defend against any such claims

10

---

11   [4] Atlantic Casualty contends these damages are based upon a breach of contract

12   theory of liability and therefore fall under the exception outlined in the definition.

13   ECF No. 26 at 10–14.  However, the Court merely evaluates whether the *facts*

14   alleged, when liberally construed, could establish an insurance claim within the

15   policy's coverage.  *Nat'l Surety Corp.*, 176 Wash.2d at 879.  The particular theory

16   of liability the Carrascos assert against Johnny's in the state proceedings is

17   irrelevant for imposition of the duty to defend.  *See State Farm*, 102 Wash.2d at

18   486 ("Thus, the duty to defend hinges not on the insured's potential liability to the

19   claimant, but rather on whether the complaint contains any factual allegations

20   rendering the insurer liable to the insured under the policy.").

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13

unless the policy language or an express exclusion places the claim outside the

policy's coverage.

However, the Carrascos' factual allegations concerning the loss of insurance

benefits, making false and deceptive statements, concealing information, operating

under a conflict of interest, and for violating the Washington Consumer Protection

Act do not constitute damage to tangible property as defined by the policy.  ECF

No. 27 at 16 ¶ 17 (Endorsement Amended Definition - Property Damage)

("'Property damage' does not include breach of contract, breach of any express or

implied warranty, deceptive trade practices or violation of any consumer protection

laws.").  Any damage claims based on those facts plainly do not fall within the

policy's coverage.  Johnny's does not dispute this.  ECF No. 31 at 11 (calling them

"irrelevant claims . . . which are not pertinent to this motion at all.")

Next, Atlantic Casualty contends that policy exclusions j(5) and j(6)

eliminate coverage for any property damage caused by the wall collapse.  ECF No.

26 at 14–16.  These exclusions provide:

> 2. Exclusions
>    This insurance does not apply to:
>    . . .
>    j.    Damage To Property
>          "Property damage" to:
>          . . .
>          (5) That particular part of real property on which you or any
>          contractors or subcontractors working directly or indirectly on
>          your behalf are performing operations, if the "property damage"
>          arises out of those operations; or

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

1
2

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

3   ECF No. 27 at 9.

4   Johnny's mistakenly argues that these exclusions have no application at all.

5   ECF No. 31 at 13–14.  Johnny's confusingly argues that since it "performed no

6   work on the property at issue" nor did any "subcontractor working for Johnny's"

7   perform any work for Johnny's, then the exclusions do not apply. *Id*.  Johnny's

8   confuses its defense to the underlying state court action, which is irrelevant to the

9   case before this Court, with the potential that it could be held liable for damages

10  under the Carrascos' factual or legal theory of liability in the state court action.  In

11  this Court, it does not matter that Johnny's may have a successful defense to the

12  damage claims.  This Court must determine, in the light most favorable to

13  Johnny's, whether Atlantic Casualty owes a duty to defend under the insurance

14  policy on any chance that the Carrascos' cause of action would be successful.  It is

15  through this lens that this Court views the case.

16  Washington law indicates that exclusions such as these operate to bar

17  coverage for damages incurred on the construction site during and as a result of

18  construction operations.  *See Vandivort Const. Co. v. Seattle Tennis Club*, 11

19  Wash. App. 303, 308 (1974) ("Endorsement No. 7(2)(iv)(a) which excludes

20  coverage for damage to 'that particular part of any property, . . . upon which

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15

operations are being performed by . . . insured . . .’ bars Vandivort's recovery. …

The plain meaning of the language covers the situation here. Vandivort was

performing operations on the property and the injury here for which damages are

claimed arose out of those operations.”); and *Canal Indem. Co. v. Adair Homes,*

*Inc.*, 737 F. Supp. 2d 1294, 1301 (W.D. Wash. 2010), *aff'd*, 445 F. App'x 938 (9th

Cir. 2011).

   In *Canal*, the district court held that “[t]he ongoing operations exclusion bars

coverage for ‘property damage to [t]hat particular part of real property which you

or any contractors or subcontractors ... are performing operations if the property

damage arise out of those operations ....’” *Canal,* 737 F. Supp. 2d at 1301.  The

court explained that “Washington courts have interpreted the language of an

ongoing operations exclusion to apply to the insureds’ entire operations.” *Id*.

“This exclusionary language is designed to exclude coverage for defective

workmanship by the insured builder causing damage to the construction project.”

*Id*. at 1302.  *See also Harrison Plumbing & Heating, Inc. v. New Hampshire*

*Insurance Group*, 37 Wash. App. 621, 626 (1984) (holding that ongoing operations

exclusion ensures that an insured is not indemnified for damages resulting because

the insured furnished defective materials or workmanship).  As the district court in

*Canal* explained,

> this interpretation of the exclusions is entirely consistent with commercial
> general liability policies. Commercial general liability policies are designed

1
2
3
4

generally to provide coverage for a number of risks, including employee injuries while on the work site and physical damage to property other than the work of the insured. The two exclusions for damages to the work of the insured during construction and after completion are common "business risk" exclusions, designed to prevent the commercial general liability policy from being considered a performance bond, product liability insurance, or malpractice insurance.

5

*Canal*, 737 F. Supp. 2d at 1302.  On appeal, the Ninth Circuit agreed that the

6

insurance company had no "duty to defend against property damage claims that

7

occurred during construction pursuant to the insurance policies' J(5) and J(6)

8

business risk exclusions."  *Canal Indem. Co. v. Adair Homes Inc.,* 445 F. App'x

9

938, 940 (9th Cir. 2011) (unpublished).  The court explained that "[c]overage was

10

barred because these exclusions applied to all of Adair Homes' ongoing operations

11

during the construction of the residence, as well as to direct damages stemming

12

from the alleged defective construction."  *Id.*

13

Here, as in *Canal*, the damage allegedly caused by Johnny's or its alleged

14

subcontractor is precisely the type of damage excluded by exclusions j(5) and j(6).

15

These exclusions bar coverage to "[t]hat particular part of real property on which

16

you or your contractors or subcontractors working directly or indirectly on your

17

behalf are performing operations, if the 'property damage' arises out of those

18

operations" or to "[t]hat particular part of any property that must be restored,

19

repaired or replaced because 'your work' was incorrectly performed on it."  Thus,

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

1    by the exclusions' plain terms, the insurance policy is not applicable to damage to

2    the western wall that fell down or the Hardie panel siding it fell upon.

3        Atlantic Casualty argues that the construction of the wall is additionally

4    excluded from coverage under the policy's "Classification Limitation."  ECF Nos.

5    26 at 16–18; 33 at 7–9.  The policy's Classification Limitation reads:

> This insurance does not apply to and no duty to defend is provided for "bodily injury," "property damage," "personal and advertising injury" or medical payment unless the insured can demonstrate the "bodily injury", "property damage", "personal and advertising injury" or medical payments arise out of the classification(s) shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements.

10    ECF No. 27 at 14.  The classifications identified in the policy are (1) "Carpentry—

11    construction of Residential Property Not Exceeding Three Stores (sic) in Height,"

12    ECF No. 27 at 6; (2) "Contractors-Subcntrct Build Const., Reconst., Repair,

13    Erection—1 or 2 Family Dwellings," *id.* at 7; (3) "Door, Window or Assembled

14    Millwork—Installation Metal," *id.*; (4) "Roofing—Residential and Commercial,"

15    *id.*; and (5) "Siding Installation," *id.*

16        First, Johnny's admits that its March 26 contract with Carrascos did not

17    involve construction of residential property.  *See* ECF No. 28 at 60.  As such, any

18    non-residential carpentry or contracting work done would be excluded from

19    coverage under the first two classification limitations.  Second, there is no

20    indication that the construction and collapse of the wall involved metal door,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

window, or millwork installation, or installation of siding.  Johnny's has not argued

otherwise.  *See* ECF No. 31 at 15–17.

Instead, Johnny's contends that the work is encompassed by the roofing

classification, arguing that Atlantic Casualty's assertion to the contrary "fails to

consider whether the wall blowing over arose out of any improper roofing

connections or temporary bracing involved in the roof connection process which

allegedly should have prevented the same."  *Id.* at 15–16.  Johnny's continues:

"Arguably, the top of the wall could not tip over if the proper roofing connections

for holding the same were properly installed and secured and thus there is an

aspect of roofing at issue."  *Id.* at 16.  Based upon these assertions, Johnny's then

argues that, as a matter of law, the classification of "roofing" in the policy "is

liberally construed . . . to establish that the policy covers the classification of the

type of work at issue."  *Id.* at 17.  The Court disagrees.

Upon a motion for summary judgment, an opposing party must identify

specific genuine factual issues by affidavit or otherwise that would support its

claim(s).  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256.  "[M]ere allegation and

speculation do not create a factual dispute for purposes of summary judgment."

*Nelson v. Prima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  Here

Johnny's admitted that it did not install or repair any roofing pursuant to the

contracts.  ECF No. 28 at 62–64, Admission Nos. 6, 13, 14.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 19

1    Johnny's speculation about whether the western wall included roofing

2  connections and whether the hypothetical connections were improperly installed is

3  insufficient to survive summary judgment.  Johnny's has presented no facts to

4  support its bare assertions that "the roofing and roof framing process *may* also

5  include temporary bracing of the portions of the structure," or that "[*a*]*rguably*, the

6  tops of the wall could not tip over if the proper roofing connections" were

7  installed.  ECF No. 31 at 16–17 (emphasis added).  Johnny's has failed to point to

8  any factual allegations in the state court proceedings or produce any extrinsic facts

9  before this Court which raise a genuine factual dispute as to whether construction

10  of the western wall constituted roofing work.  Indeed, Johnny's has failed to

11  produce even a scintilla of evidence in support of its argument that construction of

12  the western wall constitutes roofing work.

13    Nevertheless, under the terms of the policy, it is not Atlantic Casualty's

14  burden to demonstrate that the construction of the wall did not involve roofing

15  work.  Rather, as plainly established by the insurance policy's terms, it is Johnny's

16  burden to demonstrate that construction of the wall in fact involved roofing work

17  or was encompassed by one of the other classifications.  ECF No. 27 at 14; *see*

18  *also Quadrant Corp.*, 154 Wash.2d at 180 ("While exclusions should be strictly

19  construed, a strict application should not trump the plain language of the

20  exclusion.").

1    The insurance policy does not cover damage claims, other than damage to

2    tangible property as defined by the policy.  The property damage to the western

3    wall and Hardie panel siding occurring during the course of performing operations

4    is excluded under exclusions j(5) and j(6).   Moreover, even if these damages were

5    not excluded by exclusions j(5) and j(6), the policy's Classification Limitation

6    additionally does not cover the type of work from which the damages allegedly

7    emanated.  As such, Atlantic Casualty is entitled to judgment as a matter of law

8    that it has no duty to defend Johnny's in the state proceedings or to indemnify

9    Johnny's for any liability related to the collapsed wall.[5]

10   **IT IS HEREBY ORDERED:**

11       1) Plaintiff Atlantic Casualty Insurance Company's Motion for Summary

12          Judgment (ECF No. 26) is **GRANTED**.

13       2) The Court **FURTHER FINDS AND DECLARES** as follows:

14              Plaintiff Atlantic Casualty Insurance Company has no duty under

15              commercial general liability coverage insurance policy No.

16

---

17   [5] Because the duty to defend is broader than and encompasses fully the duty to

18   indemnify, *see Nat'l Surety Corp.*, 176 Wash.2d at 878–79, the conclusion that

19   Atlantic Casualty has no duty to defend Johnny's establishes *a fortiori* that Atlantic

20   Casualty has no duty to indemnify Johnny's.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 21

L209000199 (renewal of policy No. L209000103) to defend or to

indemnify Defendant Johnny's Quality Exteriors, Inc., for any

claims raised against Johnny's in Yakima County Superior Court

case No. 14-2-00560-1.

The District Court Executive is directed to enter this Order and Judgment

accordingly, provide copies to counsel, and close the file.

**DATED** September 17, 2015.



THOMAS O. RICE
United States District Judge